UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GORDON P. GOLD,

                              Plaintiff,

                                                                Case # 15-CV-470-FPG

v.

                                                                   DECISION & ORDER

STRYKER CORPORATION, STRYKER SALES
CORPORATION, HOWMEDICA OSTEONICS CORP.
d/b/a/ STRYKER ORTHOPAEDICS, and KALEIDA
HEALTH d/b/a/ BUFFALO GENERAL MEDICAL
CENTER,
                            Defendants.
_____

## INTRODUCTION

Plaintiff Gordon P. Gold ("Plaintiff") originally brought this action on April 23, 2015 in New York State Supreme Court, County of Erie, seeking to recover damages suffered as a result of two failed knee revision surgeries. ECF No. 1, Ex. A ("Complaint").

Defendants Stryker Sales Corporation ("Stryker Sales") and Howmedica Osteonics Corp. d/b/a/ Stryker Orthopaedics ("Howmedica"), citing the diversity jurisdiction of federal district courts under 28 U.S.C. § 1332, removed the case to this Court. ECF No. 1.

Stryker Sales and Howmedica then filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 6. A similar motion was filed by Defendant Stryker Corporation ("Stryker Corp."). ECF No. 12. Plaintiff, arguing that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 because both he and Defendant Kaleida Health d/b/a/ Buffalo General Medical Center ("Kaleida Health") are citizens of New York, filed a motion to remand the case back to New York State Supreme Court. ECF No. 9.

For the reasons stated below, Plaintiff's motion to remand is granted. Defendants' motions to dismiss are denied as moot.

## LEGAL STANDARD

Subject matter jurisdiction under 28 U.S.C. § 1332 requires complete diversity of citizenship between plaintiffs and defendants, *see, e.g.*, *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978), and there is no dispute that both Plaintiff and Kaleida Health are citizens of New York.[1] However, the doctrine of fraudulent joinder provides that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998). In *Pampillonia*, the Second Circuit summarized the relevant standard as follows:

> In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court. The defendant seeking removal bears a heavy burden of proving fraudulent joiner, and all factual and legal issues must be resolved in favor of the plaintiff.

*Id.* at 461.[2]

Defendants do not argue that Plaintiff included Kaleida Health as part of an outright fraud to defeat diversity. *See* ECF No. 1; ECF No. 10. Plaintiff's motion to remand therefore turns on whether Defendants can demonstrate, by clear and convincing evidence, that there is no possibility Plaintiff can state a claim against Kaleida Health in this case.

---

[1] Plaintiff alleges that he is a resident of the State of New York and that Kaleida Health is a New York non-profit corporation. Complaint at ¶¶ 1, 9. Defendants do not contest either of these allegations. ECF No. 1, at 2-3.

[2] Defendants cite *In re Rezulin Products Liab. Litig.*, 133 F. Supp. 2d 272, 280 n.4 (S.D.N.Y. 2001) for the proposition that the "no possibility" standard in *Pampillonia* "cannot be taken literally," and is more properly understood as requiring the defendant to show that there is "no reasonable basis" for the liability alleged. ECF No. 10, at 8-9. The Court agrees that the "no possibility" standard cannot require defendants to eliminate all *theoretical* possibilities of recovery, such as a change in the prevailing law. *In re Rezulin*, 133 F. Supp. 2d at 280 n.4. When the Court employs the "no possibility" standard in this decision, the Court refers to the word "possibility" in a *practical* sense, based on the pleadings and on Plaintiff's right to relief under existing law. With that in mind, the difference between "no possibility" and "no reasonable basis" is negligible.

## DISCUSSION

I. **Background**[3]

On September 18, 2007, Plaintiff underwent revision surgery at Buffalo General Hospital, which is owned and operated by Kaleida Health, in order to replace a failed left knee replacement. Complaint at ¶ 12. This revision surgery involved the insertion of a "Stryker Duracon" revision knee replacement. *Id.* at ¶ 13-15.

Despite the September 2007 procedure, Plaintiff experienced chronic pain and instability in his left knee. *Id.* at ¶ 16. As a result, Plaintiff underwent another knee revision surgery at Buffalo General Hospital on May 29, 2012. *Id.* The May 2012 procedure revealed that the Stryker Duracon revision knee replacement "had failed and/or was defective, thereby causing injury to [P]laintiff." *Id.* at ¶ 17. However, Kaleida Health did not "pathologically examine and/or retain the 'Stryker Duracon revision knee replacement components' explanted [sic] during the surgery of May 29, 2012." *Id.* at ¶ 35.

During the May 2012 surgery, doctors inserted a "Stryker MRH" revision knee replacement in place of the Stryker Duracon product. *Id.* at ¶ 50-51. However, Plaintiff "has continued to suffer significant and chronic knee pain, and limitations in use of his left knee and leg." *Id.* at ¶ 52. Plaintiff alleges that the Stryker MRH revision knee replacement, like the Stryker Duracon, is defective. *Id.* at ¶ 59.

II. **Claims Against Kaleida Health**

With respect to both the Stryker Duracon and Stryker MRH revision knee replacements, Plaintiff's complaint sets forth allegations against Kaleida Health sounding in negligence, strict products liability, and breach of warranty. *Id.* at 7, 9, 10, 14, 16. Plaintiff's motion to remand, however, argues only that "Plaintiff has pled a valid state negligence claim" against Kaleida

---

[3] The allegations in this section are taken from Plaintiff's Complaint (ECF No. 1, Ex. A), and are accepted as true for the purpose of Plaintiff's motion to remand. *Pampillonia*, 138 F.3d at 461.

Health. ECF No. 9-1, at 2. More specifically, Plaintiff focuses solely on the allegation in his complaint that Kaleida Health was "careless, reckless and/or negligent by and through its agents, servants and/or employees by failing to pathologically examine and/or retain the 'Stryker Duracon revision knee replacement components' explanted [sic] during the surgery of May 29, 2012." Complaint at ¶ 35; see ECF No. 9-1, at 3.

As Defendants correctly point out, there is no possibility Plaintiff can state a claim against Kaleida Health based on Kaleida Health's alleged failure to "retain" the Stryker Duracon revision knee replacement after it was removed from Plaintiff's knee during the May 2012 procedure. This allegation can only reasonably be understood as an attempt to assert a claim for spoliation of evidence, and spoliation is not an independent tort under New York law. *Tucker v. Kaleida Health*, No. 09-CV-719, 2011 WL 1260117 *4 (March 31, 2011) (citing *Ortega v. City of New York*, 9 N.Y.3d 69, 83 (2007)).

However, with respect to Plaintiff's allegation that Kaleida Health negligently failed to "pathologically examine" the Stryker Duracon revision knee replacement, the Court cannot say with the required level of certainty that Plaintiff will be unable to state a claim for relief. Contrary to Defendants' characterization, this allegation can reasonably be understood as something other than a spoliation claim.[4] Under New York law, a hospital may be held vicariously liable for the negligence of physicians and other employees that are acting under the hospital's control. *Bing v. Thunig*, 2 N.Y.2d 656, 667 (1957). Physicians, in general, may be held liable when they deviate from the accepted standard of medical care and thereby cause injury to a patient. *See, e.g., Wilk v. James*, 967 N.Y.S.2d 259, 262-63 (4th Dep't. 2013).

---

[4] Defendants argue that Plaintiff's motion to remand, in which Plaintiff's counsel details an effort to locate the subject Stryker Duracon components "for purposes of inspection," shows that Plaintiff is merely asserting a spoliation claim. ECF No. 10, at 10-11; see ECF No. 9-1, at 3. But Plaintiff's counsel "contacted *the pathology department* of Buffalo General Medical Center," and was informed that "there was no record of *the pathology department* ever receiving" the Stryker Duracon components. ECF No. 9-1, at 3 (emphasis added). Whether the pathology department in particular ever received the Stryker Duracon components is much more relevant to a negligence claim than to a spoliation claim.

4

Here, Plaintiff alleges that the May 2012 procedure, in which the Stryker Duracon revision knee replacement was removed from Plaintiff's left knee and replaced with a Stryker MRH revision knee replacement, revealed that the Stryker Duracon components were defective. Complaint at ¶ 17. Plaintiff further alleges that Kaleida Health did not "pathologically examine" the Stryker Duracon components, *id.* at ¶ 35, and that Plaintiff continued to suffer from chronic knee pain and limitations in the use of his left knee and leg even after the Stryker Duracon components were replaced with Stryker MRH components, *id.* at ¶ 52.

The crux of these allegations is that once Kaleida Health knew the Stryker Duracon components were defective, Kaleida Health could have performed some sort of diagnostic assessment on them to determine whether Stryker MRH was a suitable replacement. New York law is replete with examples of claims against doctors and hospitals based on the failure to perform a certain test or examination that would have prevented the plaintiff's injuries. *See, e.g.*, *Wilk*, 967 N.Y.S.2d at 262-63; *Facklam v. Rosner*, 536 N.Y.S.2d 326, 327-28 (4th Dep't. 1988); *Imbierowicz v. A.O. Fox Mem'l Hosp.*, 841 N.Y.S.2d 168, 170-72 (3d Dep't. 2007). If an examination of the Stryker Duracon components would have revealed that Stryker MRH suffered from the same defects, and if the failure to perform such an examination was a deviation from the accepted standard of medical care, then Kaleida Health may be held liable for the injuries Plaintiff suffered as a result. The Court cannot conclude, therefore, that there is no possibility Plaintiff can state a claim for relief against Kaleida Health in this case.

Defendants argue Plaintiff has not alleged that Kaleida Health's failure to examine the Stryker Duracon components caused any harm to Plaintiff other than preventing him from inspecting those components for the purpose of discovery, which only amounts to an invalid spoliation of evidence claim. ECF No. 10, at 10-12. But Plaintiff does allege that despite the May 2012 surgery at Kaleida Health, in which defective Stryker Duracon components were

5

replaced with a Stryker MRH revision knee replacement, he "has continued to suffer significant and chronic knee pain, and limitations in use of his left knee and leg." Complaint at ¶ 52. If Kaleida Health's failure to examine the defective Stryker Duracon components resulted in a similarly defective Stryker MRH product being inserted into his knee, then it is certainly plausible that the injuries Plaintiff suffered after the May 2012 surgery were caused by Kaleida Health.

It is also important to reiterate that in the context of Plaintiff's motion to remand, Defendants' burden of showing fraudulent joinder is a "heavy burden" which is "greater than the requisite burden to dismiss for failure to state a claim." *Tucker*, 2011 WL 1260117 *2 (citing *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 182-83 (S.D.N.Y. 2003)). Defendants must show fraudulent joinder by clear and convincing evidence, and "[i]f there is a possibility that a right to relief exists under the governing law, fraudulent joinder will not be found." *Id.* Even if Plaintiff's allegations regarding causation were insufficient to state a negligence claim against Kaleida Health, the Court cannot conclude that no possibility of a right to relief exists under governing law.

In sum, Defendants have not met their "heavy burden" of showing, by clear and convincing evidence, that Kaleida Health was fraudulently joined. *Pampillonia*, 138 F.3d at 460-61. Because it is undisputed that both Plaintiff and Kaleida Health are citizens of New York, this Court lacks subject matter jurisdiction over this case under 28 U.S.C. § 1332. Plaintiff's motion to remand is therefore granted, and Defendants' motions to dismiss are denied as moot.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to remand (ECF No. 9) is GRANTED. The motions to dismiss filed by Howmedica and Stryker Sales (ECF No. 6) and Stryker Corp.

6

(ECF No. 12) are DENIED AS MOOT. The Clerk of the Court is directed to close this case, and to transmit this Order to the Clerk of the Supreme Court of the State of New York, County of Erie.

    IT IS SO ORDERED.

Dated: March 14, 2016
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court